**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TJ SUTTON ENTERPRISES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 25-232** |
| **CRSC, LLC** | **SECTION: "G"** |

**ORDER AND REASONS**

Before the Court is Defendant CRSC, LLC's[1] ("CRSC") Motion to Dismiss.[2] In the motion, CRSC argues that this case should be dismissed because it is duplicative of a previously filed case pending before this Court.[3] CRSC requests that this case be dismissed, or alternatively, administratively stayed pending resolution of the previously-filed case. Plaintiff TJ Sutton ("TJ Sutton") opposes the motion. Considering the motion, the memoranda in support and in opposition, the record, and the applicable law the Court denies the motion.

## I. Background

### *A. Factual Background*

TJ Sutton and CRSC entered into a "Receipt, Release, Settlement and Indemnity Agreement with Reservation of Rights" ("Settlement Agreement"), which was signed by the parties on August 29, 2023 and August 30, 2023, respectively.[4] The Settlement Agreement

---

[1] Formerly known as "Citadel Recovery Services, LLC"

[2] Rec. Doc. 11.

[3] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914.

[4] Rec. Doc. 1 at 2.

concerned three cases pending in the U.S. Virgin Islands, which were collectively referred to as the "*Cotto* Matters."[5] Section II(1) of the Settlement Agreement provided:

> Upon execution of this Agreement, Citadel will file a motion in The Interpleader Suit to release the $500,000.00 interpleader bond provided by Travelers and to release $833,504.33 payable immediately to Sutton. Sutton and Travelers agree to join in this motion and not oppose the release of the $500,000.00 bond provided by Travelers or the release of $833,504.33 to Sutton.[6]

The Complaint identifies the interpleader action as *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914.[7] Section II(2) of the Settlement Agreement provided, "Citadel agrees to pay Sutton an additional sum of $266,495.67 within the earlier of (a) the funds being received by Citadel from AECOM, (b) one-year from the date this Agreement is executed, or (c) dismissal of the pending claims of Jerry Baptiste."[8]

According to the Complaint, despite one year passing, CRSC has refused to pay TJ Sutton the sum of $266,495.67.[9] Section II(3) of the Settlement Agreement provided:

> Within 30 days of the execution of this Agreement, Citadel will file a motion with the Court to release $271,188.88 of the Interpled Funds into the Trust Account of its counsel, Robert J. Ellis ("The Trust Funds"). Travelers and Sutton agree to join in this motion and not oppose the release of $271,188.88 to the Trust Account of Robert J. Ellis.[10]

---

[5] *Id.* at 4, n.1. The "Cotto Matters" were defined in the Settlement Agreement as the following three lawsuits: *Cotto, et al v. Citadel Recovery Services, LC, et al.*, No. 3:21-cv-00016; *Cotto, et al v. Gerald Tolliver, et al.*, No. ST-2002-cv-00073; and *Gov. of the Virgin Islands ex rel. Cotto, et al. v. Gerald Toliver, et al.*, No. ST-2002-cv-00081.

[6] *Id.* at 2.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

CRSC filed the contemplated motion, which was joined by TJ Sutton, and this Court denied the motion.[11] Section II(4) of the Settlement Agreement provided:

> The Trust Funds shall first be used to resolve the Cotto Matters on behalf of Citadel and Sutton. Citadel understands and accepts that any additional sums needed to resolve the Cotto Matters shall be provided by Citadel, not Sutton. To that end, Citadel agrees to indemnify Sutton from any liability above The Trust Funds in the Cotto Matters.[12]

The Complaint states that the *Cotto* matters reached a preliminary settlement in February 2024.[13] According to the Complaint, CRSC is responsible for the indemnification of TJ Sutton with respect to the *Cotto* matters and the preliminary settlement reached in February 2024.[14] According to the Complaint, the responsibility of CRSC to resolve the *Cotto* matters and indemnify TJ Sutton of any amounts above the Trust Funds was independent of the release of any funds from the registry of the Court.[15] The Complaint states that CRSC has refused to indemnify TJ Sutton in relation to the *Cotto* matters.[16]

### *B. Procedural Background*

#### 1. Prior Litigation

On April 6, 2022, Citadel filed a Interpleader Complaint in this Court against Morgado Rentals, Inc., Smart Freight Funding, LLC, TJ Sutton Enterprises, LLC, and Travelers Casualty and Surety Company.[17] Citadel placed the total sum of $1,751,430.53 into the registry of the Court,

---

[11] *Id.*

[12] *Id.* at 4.

[13] *Id.* at 5.

[14] *Id.*

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

inclusive of: (1) funds received by Citadel from AECOM totaling $833,504.33; (2) cash deposit from Citadel of $417,926.20; and (3) bond provided by Travelers in the amount of $500,000.[18] On June 19, 2023, Jerry Baptiste ("Baptiste") filed a Motion to Intervene alleging rights to the interpled funds.[19] Baptiste disclosed to the Court that the amount needed to protect his claim was $307,000.[20] On October 17, 2023, TJ Sutton and Citadel filed an unopposed Motion for Interpleader Disbursement following a settlement agreement between TJ Sutton, Citadel, and Travelers,[21] which was granted by the Court. The amount of $833,504.33 payable to TJ Sutton was disbursed, and the $500,000 bond was released to Travelers Casualty and Surety Company.[22]

On June 5, 2025, a settlement conference was held before the Magistrate Judge, wherein a partial settlement was reached as to Baptiste.[23] On July 18, 2025, Toliver and TJ Sutton filed a Joint Stipulation.[24] On August 13, 2025, Citadel filed a motion for disbursement of interpled funds.[25] On September 8, 2025, Toliver filed an *Ex Parte* Motion for Disbursement of Funds, requesting partial disbursement in the amount of $67,500 pursuant to the joint stipulation.[26] On September 15, 2025, the Court granted Toliver's motion.[27]

---

[18] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 7; Rec. Doc. 39; Rec. Doc. 42.

[19] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 52.

[20] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 85-1 at 2.

[21] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 85.

[22] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 89.

[23] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 142.

[24] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 156.

[25] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 160.

[26] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 165.

[27] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 66.

On January 14, 2026, the Magistrate Judge held a settlement conference.[28] On March 6, 2026, the Magistrate Judge entered a Report and Recommendation, recommending that the parties file a joint motion for disbursement of $130,000.[29] On June 29, 2026, Citadel and TJ Sutton filed a Joint Motion to Disburse Funds from the Registry.[30] On August 3, 2026, the Court granted the motion.[31]

**2. Current Litigation**

On February 3, 2025, TJ Sutton filed a Complaint in this Court, asserting causes of action for: (1) Breach of Contract related to the August 2023 Settlement Agreement; (2) Breach of Contract related to a preliminary settlement in February 2024; (3) Breach of Good Faith and Fair Dealing; (4) Declaratory Judgment; and (5) Breach of Contract in Bad Faith.[32] On October 23, 2025, CRSC filed the instant Motion to Dismiss.[33] On January 27, 2026, TJ Sutton filed an opposition to the motion.[34]

## II. Parties' Arguments

### *A. CRSC's Arguments in Support of the Motion*

In the motion, CRSC argues that this action is the second lawsuit filed between the same parties over the same underlying contract dispute.[35] CRSC explains that federal law bars

---

[28] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 169.

[29] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 170.

[30] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 172.

[31] *Citadel Recovery Services, LLC v. T.J. Sutton Enterprises, LLC,* Case No. 22-cv-914, Rec. Doc. 173.

[32] Rec. Doc. 1.

[33] Rec. Doc. 11.

[34] Rec. Doc. 18.

[35] Rec. Doc. 11-1 at 1.

duplicative suits that arise from the same nucleus of operative facts, and dismissal is warranted to prevent piecemeal litigation and inconsistent rulings.[36] CRSC contends that this case does not present a new controversy.[37]

CRSC argues that the parties in the instant litigation are identical to the previously-filed case.[38] CRSC avers that the two cases are grounded in the same operative facts and seeks to resolve the same controversy.[39] CRSC contends that both actions seek to determine the obligations arising from the same agreement.[40] CRSC asserts that, consistent with the Fifth Circuit's claim-splitting jurisprudence, this later-filed case should be dismissed, or stayed until resolution of the previously-filed action.[41]

***B. TJ Sutton's Argument in Opposition to the Motion***

In opposition, TJ Sutton explains that CRSC has refused to pay TJ Sutton the sum of $266,495.67, as previously agreed upon by the parties.[42] According to TJ Sutton, the responsibility to indemnify TJ Sutton for the amount of $266,495.67 was independent of the release of any funds from the registry in the previously-filed matter.[43] TJ Sutton contends that the instant matter was filed for enforcement of the settlement agreement, breach of contract, and declaratory judgment that CRSC is required to indemnify TJ Sutton with respect to the preliminary settlement reached

[36] *Id.*

[37] *Id.* at 3.

[38] *Id.* at 4.

[39] *Id.* at 5.

[40] *Id.* at 6.

[41] *Id.*

[42] Rec. Doc. 18 at 4.

[43] *Id.*

in February 2024.[44]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[45] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[46] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[47] "Factual allegations must be enough to raise a right to relief above the speculative level."[48] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[49]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[50] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[51] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[52] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[44] *Id.*

[45] Fed. R. Civ. P. 12(b)(6).

[46] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[48] *Twombly*, 550 U.S. at 555.

[49] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[50] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[51] *Iqbal*, 556 U.S. at 678–79.

[52] *Id.* at 679.

statements" will not suffice.[53] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[54] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[55] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[56] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[57]

## IV. Analysis

CRSC moves to dismiss this action under the theory of "claim-splitting," arguing that this case is duplicative of a previously filed case pending before this Court. In opposition, TJ Sutton argues that the responsibility of CRSC to resolve the *Cotto* matters and to indemnify TJ Sutton was independent of the release of any funds from the registry of the Court in the previously filed matter.

"Claim-splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and another part in a later suit."[58] Adopted by the Fifth Circuit in *Super Van Inc. v. City*

---

[53] *Id.* at 678.

[54] *Id.*

[55] *Id.*

[56] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[57] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[58] *FDIC v. Nelson,* 19 F.3d 15, 1994 WL 93409, at *2 n.5 (5th Cir. Mar. 15, 1994) (per curiam) (unpublished table decision).

*of San Antonio,*[59] the rule against claim splitting:

> prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action. In a claim splitting case, the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim.[60]

"A main purpose behind the rule . . . is to protect the defendant from being harassed by repetitive actions based on the same claim."[61]

"In dealing with simultaneous actions on related theories, courts at times express principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment."[62] "A dismissal on this [claim-splitting] ground has been viewed as a matter of docket management, reviewed for abuse of discretion, even in decisions that with some exaggeration describe the theory 'as an aspect of res judicata.'"[63]

Because the prohibition against claim splitting rests on *res judicata* principles, courts rely on *res judicata*'s four-part test: (1) the parties in the current action are the same or "in privity with the parties in the prior action"; (2) "the court that rendered the prior judgment" was a "court of competent jurisdiction"; (3) the prior action "terminated with a final judgment on the merits"; and (4) the "same claim or cause of action" is "involved in both suits."[64]

This test is modified when the prior suit is pending because, by definition, no final

---

[59] 92 F.3d 366 (5th Cir. 1996).

[60] *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 Fed. App'x. 256, 265 (4th Cir. 2008) (citations and internal quotations omitted); *Nelson,* 1994 WL 93409, at *2 n.5 (holding that Fifth Circuit applies the "same transaction" test to determine whether a single claim has been split).

[61] *Super Van Inc.,* 92 F.3d at 371.

[62] 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4406, at 30 (Supp.2008); *see, e.g., Sensormatic,* 273 Fed. Appx. at 265 (affirming dismissal based on claim-splitting even where there was no final judgment in earlier action).

[63] 18 Wright, et al., *supra,* § 4406, at 30.

[64] *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994).

judgment from the prior suit exists.[65] Accordingly, in the context of claim splitting when an earlier suit is pending, the relevant *res judicata* factors are (1) whether the parties are the same or in privity and (4) whether "the same claim or cause of action" is "involved in both suits."[66]

In determining whether two suits present the same claim or cause of action, courts apply the transactional test from the Restatement (Second) of Judgments § 24.[67] "[T]he critical issue is whether the two actions were based on the 'same nucleus of operative facts,'" and courts "look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies."[68] Under the transactional test, courts assess whether the factual predicate of both suits is "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[69]

Courts have recognized that claim splitting does not bar claims that could not have been asserted at the time the first action was commenced.[70] The principal test recognized by the Fifth Circuit is whether the primary right and duty or wrong are the same in each action: "Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments?"[71]

---

[65] *See Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4406 (3d ed.).

[66] *Gulf Island-IV*, 24 F.3d at 746; *Oliney*, 771 F.2d at 859.

[67] *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004).

[68] *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992) (citation omitted).

[69] *Petro-Hunt*, 365 F.3d at 396 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

[70] *Estate of Hunt v. U. S.*, 309 F.2d 146, 148 (5th Cir. 1962); *see also Commercial Box & Lumber Co., Inc. v. Uniroyal, Inc.*, 623 F.2d 371, 374 (5th Cir. 1980).

[71] *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir. 1975).

The claims asserted in the instant action are predicated on the August 2023 Settlement Agreement, which was entered after Civil Action No. 22-cv-914 was filed on April 6, 2022. Because the underlying agreement did not exist when the earlier action commenced, TJ Sutton could not have asserted causes of action arising from the Settlement Agreement in the previously filed case. Although the requested relief may overlap in part with issues from the earlier action, the present claims arise from contractual obligations that arose only after the first suit was initiated.

Moreover, the Fifth Circuit has instructed that the relevant inquiry is whether the two actions involve the same primary right and the same alleged wrong.[72] The Fifth Circuit has further held that claim splitting does not bar claims that could not have been asserted at the time the first action was commenced.[73] While both actions stem from the underlying Virgin Islands project, the instant action seeks to enforce separate contractual obligations created by a Settlement Agreement executed *after* the commencement of the earlier litigation. Consequently, the rights asserted and duties allegedly breached in this action were not actionable when Civil Action No. 22-cv-914 commenced. Because Plaintiff could not have litigated these claims in the earlier action, the Court concludes that the rule against claim splitting does not require dismissal here.

Accordingly,

**IT IS HEREBY ORDERED** that CRSC's motion[74] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 14th day of August, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[72] *Id.*

[73] *Estate of Hunt,* 309 F.2d at 148; *see also Commercial Box & Lumber Co,* 623 F.2d at 374.

[74] Rec. Doc. 11.